1  **SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
   A Limited Liability Partnership
2    Including Professional Corporations
   AARON J. MALO, Cal. Bar No. 179985
3  *amalo@sheppardmullin.com*
   ANASTASIA K. BILLY, Cal Bar No. 210416
4  *abilly@sheppardmullin.com*
   650 Town Center Drive, 10th Floor
5  Costa Mesa, California 92626-1993
   Telephone:    714.513.5100
6  Facsimile:    714.513.5130

7  Proposed General Counsel for Plaintiff and Chapter 7
   Trustee JOHN J. MENCHACA
8

9  **RAINES FELDMAN LITTRELL LLP**
   HAMID R. RAFATJOO, Cal. Bar No. 181564
10 *hrafatjoo@raineslaw.com*
   KYRA E. ANDRASSY, Cal. Bar No. 207959
11 *kandrassy@raineslaw.com*
   1900 Avenue of the Stars, 19th Floor
12 Los Angeles, CA 90067
   Telephone:    310.440.4100
13 Facsimile:    310.691.1367

14 Proposed Special Counsel for Plaintiff and
   Chapter 7 Trustee JOHN J. MENCHACA

15                  UNITED STATES BANKRUPTCY COURT
16
           CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION
17

| 18 | In re | Case No. 2:25-bk-13838 BB |
|---|---|---|
| 19 | ASHOT GEVORK EGIAZARIAN, an individual, | Hon. Sheri Bluebond<br>Chapter 7 |
| 20 | | Adv. Proc. No. |
| 21 | Debtor. | |
| 22 | JOHN J. MENCHACA, in his capacity as | **COMPLAINT FOR:** |
| 23 | Chapter 7 Trustee, | **(1) DECLARATORY RELIEF AND SEEKING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION;** |
| 24 | Plaintiff, | |
| 25 | v. | |
| 26 | COMPAGNIE MONEGASQUE DE BANQUE, a bank of Monaco of unknown | **(2) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;** |
| 27 | form; MITRA HOLDINGS SA, a Luxembourg entity of unknown form; LEX THIELEN, an | |
| 28 | | |

-1-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

individual; LEX THIELEN & ASSOCIES, a
Luxembourg entity of unknown form;
PB MONTAIGNE ATTORNEYS-AT-LAW
LTD, a Swiss entity of unknown form; SUREN
YEGIARZARYAN, also known as SUREN
EGIAZARIAN, an individual; ARTEM
YEGIARZARYAN, also known as ARTEM
EGIAZARIAN, an individual;

Defendants.

**(3) AVOIDANCE AND RECOVERY OF
FRAUDULENT TRANSFERS;**

**(4) AVOIDANCE OF LIENS;**

**(5) AVOIDANCE AND RECOVERY OF
PREFERENTIAL TRANSFERS; AND**

**(6) TURNOVER OF PROPERTY OF THE
ESTATE**

-2-

1    Duly-appointed Chapter 7 Trustee John J. Menchaca (the "Trustee" or "Plaintiff"), by and

2    through his proposed counsel, respectfully submits this complaint (the "Complaint") seeking

3    declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105,

4    Federal Rule of Bankruptcy Procedure Rules 7001(g) and 7001(i), and Federal Rule of Civil

5    Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065; avoidance and

6    recovery of fraudulent transfers pursuant to California Civil Code §§ 3439.05, *et seq.* and

7    11 U.S.C. §§ 544(b), 548(a)(1)(B), 550, and 551; avoidance of liens under 11 U.S.C. § 544(a);

8    avoidance and recovery of preferential transfers under 11 U.S.C. §§ 547 and 550; and turnover of

9    property of the estate pursuant to 11 U.S.C. §§ 541 and 542 and Rule 7001(a) of the Federal Rules

10    of Bankruptcy Procedure.

11    **JURISDICTION, VENUE, AND NATURE OF ACTION**

12    1.    The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157

13    and 1334, in that this adversary proceeding is a civil proceeding arising in and related to a case

14    under title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101, *et seq. – In re*

15    *Ashot Gevork Egiazarian*, assigned case No. 2:25-bk-13838 BB (the "Bankruptcy Case"), which is

16    pending in the United States Bankruptcy Court for the Central District of California, Los Angeles

17    Division (the "Bankruptcy Court").  As required by Federal Rule of Bankruptcy Procedure 7008,

18    this adversary proceeding relates to the Bankruptcy Case.

19    2.    This adversary proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A),

20    (B), (E), (F) (H), (K), and/or (O).  If this adversary proceeding is determined to be a non-core

21    proceeding, the Trustee consents to entry of final orders and judgment by the bankruptcy judge.

22    The Defendants are hereby notified that Fed. R. Bankr. P. 7012(b) requires them to admit or deny

23    whether this adversary proceeding is a core or non-core proceeding and, if non-core, to state

24    whether they do or do not consent to entry of final orders or judgment by the bankruptcy judge.

25    3.    Venue in this Court is proper under 28 U.S.C. § 1409, in that this adversary

26    proceeding is a civil proceeding arising in and related to a case under Chapter 7 of Title 11 of the

27    United States Code pending in the Los Angeles Division of the United States Bankruptcy Court

28    for the Central District of California – the Bankruptcy Case.

-1-

4.      The Trustee intends to seek, and is filing concurrently with the Complaint, an *ex parte* application requesting a temporary restraining order and preliminary injunction pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, Rules 7001(g) and (i) of the Federal Rules of Bankruptcy Procedure, and Federal Rule of Civil Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065 (the "*Ex Parte* Application"), to preserve the status quo and ensure that property within the bankruptcy estate can be recovered by the Trustee for the benefit of all creditors.

**THE PARTIES**

5.      Debtor Ashot Gevork Egiazarian (the "Debtor") commenced the Bankruptcy Case by filing a voluntary bankruptcy petition under Chapter 7 of the Bankruptcy Code on May 8, 2025 (the "Petition Date").

6.      Plaintiff John J. Menchaca was duly appointed to the role of Chapter 7 Trustee in connection with the Bankruptcy Case on May 8, 2025.

7.      On information and belief, defendant Compagnie Monégasque de Banque ("CMB Monaco") is a foreign bank of unknown form, conducting business from, among other locations, 17 Avenue des Spélugues 98000 Monaco.  On further information and belief, CMB Monaco utilizes the United States banking system to conduct business all over the world.  CMB Monaco participated in litigation before the United States District Court for the Central District of California in connection with *Vitaly Ivanovich Smagin v. Compagnie Monegasque De Banque et al.*, Central District of California Case No. 2:20-cv-11236-RGK-MAA (the "Smagin Action"), which was pending within this judicial district between December of 2020 and June of 2024, and is a party to the agreement which settled that action and provides: (i) that "Any controversy or claim arising out of or relating to the [Settlement] Agreement or the performance of any Party thereunder including any alleged breach of the terms or conditions of this Agreement ('Settlement Dispute') shall be governed by California law;" and (ii) for the parties, including Debtor and CMB Monaco, "to submit any Settlement Dispute to final and binding arbitration under the JAMS international arbitration rules before the Honorable James Ware (Ret.) of Judicial Arbitration and Mediation Services (JAMS)" in California, which Debtor had done on or about September 18,

2024 and which was assigned JAMS case no. 5100002443 (the "JAMS Arbitration"), and as to which Debtor and CMB Monaco have appeared in proceedings before Judge Ware until the filing of the Bankruptcy Case and the giving of notice thereof to JAMS earlier this month.

8.      On information and belief, defendant Mitra Holdings SA ("Mitra") is a corporation organized and existing under the laws of the nation of Luxembourg, registered there as business entity No. B117707. Mitra was formed and is owned beneficially entirely by Debtor. Mitra was created and exists for the exclusive purpose of holding title to the improved real property commonly referred as Villa La Tortue located at 75 de la Cornich d'Or, Theoule-sur-Mer, Cote d'Azur (the "Villa") for the sole benefit of Debtor. Mitra owns no assets other than the Villa, and is a litigant in the Luxembourg Litigation (defined below).

9.      On information and belief, defendant Lex Thielen is an individual living in and a citizen of Luxembourg, where he is believed to be a lawyer and senior partner of the law firm Lex Thielen & Associes, a Luxembourg-based law firm. Mr. Thielen previously represented Debtor in the Luxembourg Litigation.

10.      On information and belief, defendant Lex Thielen & Associes is a Luxembourg entity and law firm headquartered at 10, rue Willy Goergen, L-1636 Luxembourg. Lex Thielen & Associes, along with Mr. Thielen (collectively, Thielen"), previously represented Debtor in the Luxembourg Litigation.

11.      On information and belief, defendant PB Montaigne Attorneys-at-law Ltd ("PBM") is a Swiss company and law firm headquartered at 29 Avenue de Champel, 1206 Geneva. PBM holds funds belonging to Debtor, which were transferred to it at the direction of Debtor out of funds provided for him from the settlement of the Smagin Action.

12.      On information and belief, defendant Suren Yegiarzaryan, also known as Suren Egiazarian ("Suren"),[1] is an individual who holds nominal title, for the benefit of Debtor, to the improved real property located at 655 Endrino Place, Beverly Hills, California 90210 (the "Endrino Property"). Suren is Debtor's cousin and lives in the Endrino Property, but works as a

---

[1] Plaintiff intends no disrespect by defining this, or any other litigant, by his first name. He does so for clarity, as several defendants and interested parties have common or similar surnames.

-3-

1   musician, so at all times has been supported financially by Debtor.  On information and belief,

2   Suren has United States citizenship.

3       13.     On information and belief, defendant Artem Yegiarzaryan, also known as Artem

4   Egiazarian ("Artem"), is an individual to whom Debtor assigned nominal title to all shares of

5   Mitra to hold for the benefit of Debtor.  On information and belief, Artem also holds U.S.

6   citizenship and resides at the Endrino Property.  Artem is Debtor's younger brother and, on

7   information and belief, has held no meaningful employment for any length of time, but rather, like

8   Suren, has been supported financially by Debtor.

9       14.     Other defendants who are found to hold, control, have transferred, or encumbered

10  assets belonging to Debtor or which are otherwise found to be within the bankruptcy estate will be

11  added as defendants to this action at such time as the Trustee can confirm that such persons or

12  entities hold such interests and are unwilling to surrender the same to the Trustee.

13      15.     Defendants CMB Monaco, Mitra, Thielen, PBM, Suren, and Artem are sometimes

14  collectively referred to as the "Defendants" hereinafter.

15                          **GENERAL FACTUAL ALLEGATIONS**

16      16.     Debtor lived in Russia for many years, where he was successful in both politics and

17  business.  Having served as the chairman of the Moscow National Bank and having been elected

18  to the State Duma (the parliament of the Russian Federation), Debtor engaged in the standard

19  practice in Russia of appointing family members as "nominees" to hold assets on his behalf.  This

20  was done to protect his assets and privacy rights from predatory business and political rivals.  Two

21  such nominees (Suren and Artem, each a "Nominee" and collectively the "Nominees") are named

22  as defendants herein, each of whom was compensated for serving as a Nominee.  Debtor's use of

23  the Nominees has significantly complicated the Bankruptcy Case and become one of the factors

24  necessitating the filing of this Complaint.

25          A.      **The Villa**.

26      17.     Debtor and his ex-wife, Natalia Tsagolova, purchased the Villa in August 2006 for

27  EUR 9.2 million, paying EUR 3 million in cash and financing the rest with SG Private Banking.

28  They took title to the Villa through Mitra, which was specially formed solely for that purpose.

-4-

1   Mitra owns no other assets and conducts no business.  The Nominees – Artem and Suren – have

2   nominally owned the equity of Mitra, but the beneficial ownership of Mitra has always belonged

3   to, and currently belongs to, Debtor and Ms. Tsagolova.

4          18.     In December 2006, Mitra obtained a second loan for EUR 4.5 million for

5   renovation costs for the Villa, also from SG Private Banking.  Both SG Private Banking loans

6   were refinanced in 2019 with CMB Monaco.

7          19.     The Villa was, at one time, encumbered by an approximately $8 million lien held

8   by CMB Monaco.  However, in connection with a confidential May 2024 settlement, CMB

9   Monaco provided a general release that the Trustee alleges on information and belief eliminated

10  the indebtedness tied to that lien.  Accordingly, CMB Monaco no longer has a security interest in

11  the Villa.  Despite this, CMB Monaco claims to still be owed money secured by a lien against the

12  Villa, and is attempting to foreclose on the Villa, having commenced foreclosure proceedings in

13  France for that purpose (the "French Foreclosure Action").  Plaintiff is informed and believes and

14  on that basis alleges that the Villa could be ordered sold by the Court in the French Foreclosure

15  Action as early as at its next scheduled hearing on ***May 22, 2025*** – just three (3) days from now.

16         20.     As a result, Debtor commenced the JAMS Arbitration before The Hon. James Ware

17  (Ret.), previously District Judge for the United States District Court for the Northern District of

18  California.  The JAMS Arbitration will, among other things, determine the validity of the lien that

19  CMB Monaco claims to hold, as well as the amount, if any, of any indebtedness owed to CMB

20  Monaco.

21         21.     At the same time, Suren claims to own all shares of Mitra, the entity which holds

22  title to the Villa, for the benefit of Artem (rather than Debtor, who had made Artem the owner in

23  name of all Mitra shares for the benefit of Debtor).  Debtor has commenced litigation in the

24  Commercial Court of Luxembourg (the "Luxembourg Litigation") to establish that he and

25  Ms. Tsagolova are the true beneficial owners of Mitra, and through that entity, the Villa.

26         22.     Because Mitra is a shell entity whose corporate form should be disregarded, the

27  Villa is property of the bankruptcy estate.

28

-5-

23.     In connection with the marital dissolution proceedings pending between Debtor and Ms. Tsagolova, Los Angeles County Superior Court Case No. 20SRFL03636, the Family Law Division of the Court issued an order on August 28, 2024, in which it enjoined Suren and Artem from, among other things, "transferring, encumbering, hypothecating, concealing, or in any way disposing of" the Villa or "any asset or personal property located therein."  That order (the "CA Restraining Order") remains in full force and effect as affirmed by a February 5, 2025 order of the Family Law Division of the Superior Court.

**B.     The Funds Held by PBM.**

24.     In connection with both the Luxembourg Litigation and the French Foreclosure Action, Debtor originally retained Thielen.  Plaintiff is informed and believes and based thereon alleges that Thielen no longer represents Debtor in either of those cases, claiming arrearages in fees owing to Thielen.

25.     Wrongfully and without notice to Debtor, Thielen obtained a court order in Switzerland freezing $1,552,592.69 of Debtor's money (the "Funds") being held in a trust account for Debtor established by his Swiss lawyers, Rodrigue Sperison and his law firm, PBM, at Banque Cantonale de Geneve ("Bank of Geneva").  Plaintiff is further informed and believes that Thielen claims to have a lien on some or all of the Funds.

26.     Debtor subsequently changed counsel in connection with the Luxembourg Litigation, replacing Thielen with PBM.  The Trustee is informed that there is a ten-day period after notification of the court order within which to challenge it, which will run imminently.

27.     PBM had expected to transfer the funds to Debtor's bankruptcy estate, but they are at risk of being turned over to Thielen to the detriment of Debtor's other creditors.  On information and belief, Plaintiff alleges that Debtor owes no payment to Thielen, or alternatively, that Debtor owes substantially less to Thielen than the amount of the Funds.  The Funds held within PBM's Bank of Geneva Trust account are property of the bankruptcy estate.

**C.     The Endrino Property.**

28.     The Endrino Property (which includes, in addition to the real estate identified above, any other assets or personal property located therein, including any furniture, artworks,

-6-

1    paintings or other fixtures, fittings or chattels) was acquired by Debtor in May 1999 and has been

2    where Debtor resides when he is in Los Angeles.  It has been his primary residence when in the

3    United States.  The Endrino Property was acquired by Debtor using community funds.

4        29.    The beneficial interest in the Endrino Property is owned, as community property,

5    by Debtor and Ms. Tsagolova.  However, title to the Endrino Property is currently held by Suren

6    in his role as a Nominee for Debtor.

7        30.    As Debtor and his ex-wife are the beneficial owners of the Endrino Property, the

8    Endrino Property is property of the bankruptcy estate.

9        31.    The CA Restraining Order has also enjoined Suren from, among other things,

10    "transferring, encumbering, hypothecating, concealing, or in any way disposing of" the Endrino

11    Property, or "any asset or personal property located therein," and remains in full force and effect

12    today.

### FIRST CLAIM FOR RELIEF

**(For Declaratory Relief Pursuant To 28 U.S.C. Sections 2201 and 2202; 11 U.S.C. Sections 105; Rules 7001(b), (g) and (i) of the Federal Rules of Bankruptcy Procedure)**

16        32.    The Trustee repeats the allegations set forth above as if fully set forth herein.

17        33.    This is a claim for declaratory relief brought under the provisions of 28 U.S.C. §§

18    2201 and 2202, 11 U.S.C. § 105, and Rules 7001(g) & (i) of the Federal Rules of Bankruptcy

19    Procedure.

20        34.    An actual controversy has arisen and now exists between the Trustee and the

21    Defendants relating to their legal rights and duties, for which the Trustee seeks a judicial

22    declaration of rights as to such matters, as well as further necessary or proper relief, including

23    injunctive relief.

24        35.    A declaratory judgment is necessary and appropriate at this time in that the

25    Defendants contend that they own, control, and/or hold interests and/or liens in property of the

26    bankruptcy estate, including the Villa, the Funds, and the Endrino Property.  The Trustee asserts

27    that the Defendants hold only bare legal title and that Debtor and his ex-wife own all beneficial

28

1   interest in these assets.  The Trustee further asserts that the Defendants do not hold any valid

2   and/or properly perfected lien(s) against any of these assets.

3      36.   Pending the Court's determination of whether and/or to what extent the Villa, the

4   Endrino Property, and the Funds are property of Debtor's bankruptcy estate, and whether and/or to

5   what extent any of the Defendants may hold any valid and properly perfected lien(s) thereon, the

6   Trustee is requesting (via the concurrently filed *Ex Parte* Application) to preserve the status quo,

7   and thereby ensure that property included within the bankruptcy estate can be recovered.

8   Specifically, pursuant to  the provisions of 28 U.S.C. §§ 2201 and 2202, 11 U.S.C. § 105, Rules

9   7001(g) and (i) of the Federal Rules of Bankruptcy Procedure, and Federal Rule of Civil

10   Procedure 65 incorporated by Federal Rule of Bankruptcy Procedure 7065, the Trustee is

11   requesting that this Court issue an order temporarily restraining and preliminarily enjoining the

12   Defendants, and each of them, as well as any individuals or entities acting in concert with them,

13   from:

14      (a)   making any representations or assertions, or purporting to make any

15           representations or assertions, to any individual or entity – other than this

16           Court and the parties to the above-captioned adversary action – calculated

17           to suggest that they own or control the Villa, the Funds, and/or the Endrino

18           Property, or any part thereof;

19      (b)   taking, or allowing to be taken, any action transferring, encumbering,

20           hypothecating, concealing, or in any way disposing of or enforcing liens

21           against the Villa, the Funds, and/or the Endrino Property, or any part

22           thereof;

23      (c)   taking any other action or actions, the intent or effect of which is to interfere

24           with the Trustee or with property within the bankruptcy estate, or to

25           interfere with the Trustee's or the Trustee's agents' or attorneys' efforts to

26           collect and preserve assets within the bankruptcy estate.

27      37.   Money damages will not be adequate and there exists no adequate remedy at law.

28

-8-

38.     Permitting the Defendants to engage in the actions described above will adversely affect the Trustee's ability to marshal, protect, and preserve assets within the bankruptcy estate, thereby preventing appropriate and equal treatment of creditors.  The objectives of the Bankruptcy Code will be served by issuing the above-requested temporary restraining order and preliminary injunction, and so preserving the Trustee's ability to maximize a return to creditors of the bankruptcy estate.

39.     The bankruptcy estate is threatened with the possibility of immediate irreparable injury if the temporary restraining order and preliminary injunction are not granted, including loss of the Villa, the Funds, and/or the Endrino Property.

40.     The requested preliminary injunction is in the public interest.  Granting the injunction will benefit not only the Trustee, by providing him with a reasonable opportunity to marshal, protect, and preserve property within the bankruptcy estate, but all legitimate creditors of the bankruptcy estate.  On the other hand, denying the injunction would at most benefit only the Defendants.

## SECOND CLAIM FOR RELIEF

### (For Avoidance and Recovery of Fraudulent Transfers Pursuant to California Civil Code §§ 3439.05, *et seq*. and 11 U.S.C. §§ 544(b), 550, 551)

41.     The Trustee repeats the allegations set forth above as if fully set forth herein.

42.     Debtor's obligations, if any, to Thielen, and any purported lien on the Funds asserted by Thielen (the "Purported Lien"), arose within four years of the Petition Date.

43.     At all relevant times, there have been and currently are one or more creditors who have held and still hold matured or unmatured unsecured claims against Debtor that are allowable under section 502 of the Bankruptcy Code or that are not allowable only under section 502(e) of the Bankruptcy Code.

44.     Present creditors of the Debtor existed as of the time that Debtor's obligations, if any, to Thielen and the Purported Lien arose, which creditors still remained unpaid as of the Petition Date.

45.     Debtor did not receive reasonably equivalent value for the Purported Lien.

-9-

46.     At the time Debtor's obligations, if any, to Thielen and the Purported Lien arose, Debtor was insolvent and/or was rendered insolvent by virtue of Debtor's obligations to Thielen and/or the Purported Lien, in that, at fair valuation, the sum of Debtor's debts was greater than all of his assets, or Debtor was generally not able to or otherwise not paying his debts as they became due.

47.     As a result of the foregoing, pursuant to California Civil Code §§ 3439.05, *et seq.* and sections 544(b), 550, and 551 of the Bankruptcy Code, the Purported Lien was fraudulent, and Plaintiff is entitled to set aside the Purported Lien, and all of Debtor's obligations, if any, arising thereunder, and is entitled to entry of a judgment against those Defendants who, directly or indirectly, received benefits therefrom:  (a) avoiding and preserving for the benefit of the estate the Purported Lien, and all of Debtor's obligations, if any, arising thereunder; and (b) directing that the Purported Lien be set aside.

### THIRD CLAIM FOR RELIEF

**(For Avoidance and Recovery of Fraudulent Transfers
Pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550, 551)**

48.     The Trustee repeats the allegations set forth above as if fully set forth herein.

49.     Debtor's obligations, if any, to Thielen and the Purported Lien also arose within two years of the Petition Date.

50.     Debtor received less than reasonably equivalent value for the Purported Lien.

51.     At the time the Purported Lien arose and/or Debtor incurred any obligations associated therewith, Debtor was insolvent and/or was rendered insolvent by virtue of the Purported Lien, and/or the associated obligations, if any.

52.     At the time the Purported Lien arose and/or Debtor incurred any obligations associated therewith, Debtor was engaged or about to engage in business or a transaction for which any property remaining with Debtor was unreasonably small capital.

53.     At the time the Purported Lien arose and/or Debtor incurred any obligations associated therewith, Debtor intended to incur, or believed that Debtor would incur, debts beyond his ability to pay as they became due.

-10-

54.    As a result of the foregoing, pursuant to sections 548(a)(1)(B), 550, and 551 of the

Bankruptcy Code, the Purported Lien and/or any obligations associated therewith, were

fraudulent, and Plaintiff is entitled to set aside the Purported Lien and all of Debtor's obligations,

if any, associated therewith, and is entitled to entry of a judgment against those Defendants who,

directly or indirectly, received benefits from the Purported Lien or from Debtor's obligations

associated therewith:  (a) avoiding and preserving the Purported Lien and all of Debtor's

obligations, if any, in connection therewith; and (b) directing that the Purported Lien be set aside.

### FOURTH CLAIM FOR RELIEF

### (For Avoidance of Liens Under 11 U.S.C. § 544(a))

55.    The Trustee repeats the allegations set forth above as if fully set forth herein.

56.    If the Court determines that the Thielen does have any lien(s) against any of the

Funds, Plaintiff seeks to avoid such lien(s).

57.    Specifically, pursuant to 11 U.S.C. § 544(a), Plaintiff has the ability to avoid any

lien on property of the Debtor that was not properly perfected.

58.    The Funds constitute personal property of the Debtor.

59.    On information and belief, Thielen did not take any of the possible steps necessary

to perfect any lien on the Funds.

60.    Therefore, the any lien(s) that Thielen may have on the Funds should be avoided.

### FIFTH CLAIM FOR RELIEF

### (For Avoidance and Recovery of Preferential Transfers
### Under 11 U.S.C. §§ 547 and 550)

61.    The Trustee repeats the allegations set forth above as if fully set forth herein.

62.    On or within 90 days prior to the Petition Date, Thielen asserts that it obtained a

security interest in the Funds (the "Transfer").

63.    Plaintiff is informed and believes and based thereon alleges that Thielen was a

creditor of Debtor at the time the Transfer was made.

-11-

64.    Plaintiff is informed and believes and on that basis alleges that the Transfer was made for the benefit of Thielen on account of an antecedent debt owed by Debtor before such Transfer was made.

65.    The Transfer was made while Debtor was insolvent.

66.    The Transfer enabled Thielen to receive more than they would have received (a) in a bankruptcy case under Chapter 7 of the Bankruptcy Code, (b) if the Transfer had not been made, and (c) if Thielen received payment to the extent provided under the Bankruptcy Code.

67.    By reason of the foregoing, the Trustee, on behalf of the estate, is entitled to avoid and set aside the Transfer under section 547 of the Bankruptcy Code.

68.    Pursuant to section 550 of the Bankruptcy Code, the Trustee is further entitled to recover the value of the Transfer, for the benefit of the estate.

**SIXTH CLAIM FOR RELIEF**

**(For Turnover of Property of the Estate Pursuant to 11 U.S.C. §§ 541 and 542 and Rule 7001(a) of the Federal Rules of Bankruptcy Procedure)**

69.    The Trustee repeats the allegations set forth above as if fully set forth herein.

70.    This is a claim for turnover of property of the estate pursuant to Bankruptcy Code sections 541 and 542 and Federal Rule of Bankruptcy Procedure 7001(a).

71.    The Funds are property of the estate under Bankruptcy Code section 541.

72.    Demand was previously made on behalf of Debtor for turnover of the Funds.  To date, the funds have not been turned over to the estate.

73.    The Trustee hereby renews the demand for turnover of the Funds pursuant to Bankruptcy Code section 542(a).

**PRAYER FOR RELIEF**

WHEREFORE, the Trustee prays for relief as follows:

1.    On the First Claim For Relief, that the Court declare that the Villa, the Funds, and the Endrino Property are property of the bankruptcy estate, and that the Court further declare that the Defendants do not hold any lien(s) thereon;

-12-

2.      Further based on the First Claim For Relief, pursuant to the concurrently filed *Ex Parte* Application, the Trustee is also requesting that the Court temporarily restrain and preliminarily enjoin the Defendants, and any individuals or entities acting in concert with them, from:

(a)      making any representations or assertions, or purporting to make any representations or assertions, to any individual or entity – other than this Court and the parties to the above-captioned adversary action – calculated to suggest that they own or control the Villa, the Funds, and/or the Endrino Property, or any part thereof;

(b)      taking, or allowing to be taken, any action transferring, encumbering, hypothecating, concealing, or in any way disposing of or enforcing liens against the Villa, the Funds, and/or the Endrino Property, or any part thereof; and

(c)      taking any other action or actions, the intent or effect of which is to interfere with the Trustee or with property within the bankruptcy estate, or to interfere with the Trustee's or the Trustee's agents' or attorneys' efforts to collect and preserve assets within the bankruptcy estate;

3.      On the Second and Third Claims For Relief, for a judgment (a) determining that the Purported Lien was fraudulent; and (b) avoiding the Purported Lien, and all obligations arising therefrom, and preserving them for the benefit of the estate, under 11 U.S.C. §§ 544, 548, 550 and 551 and the California Civil Code §§ 3439.04, et seq.;

4.      On the Fourth Claim For Relief, for judgment against Thielen, and each of them, that avoids any and all liens Thielen may have on the Funds;

5.      On the Fifth Claim For Relief, for judgment avoiding the Transfer, preserving the Transfer for the benefit of the estate, and ordering recovery of the value of the Transfer;

6.      On the Sixth Claim For Relief, for an order requiring that PBM, and/or any other Defendant in possession of any of the Funds or any portion thereof, immediately cause the Funds to be turned over to the Trustee; and

7.      For an award of attorneys' fees and costs, to the full extent available; and

-13-

SMRH:4926-2802-5925.4                                                                                          COMPLAINT

1          8.    For such other and further relief as the Court deems just and proper.

2    Dated:  May 19, 2025

3                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

4

5              By    _____
                     */s/ Aaron J. Malo*

6                         AARON J. MALO
                     ANASTASIA K. BILLY

7                         Proposed General Counsel for
                     Plaintiff and Chapter 7 Trustee

8                         JOHN J. MENCHACA

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-14-