1  Mazda K. Antia (214963)
   *mantia@cooley.com*
2  COOLEY LLP
   10265 Science Center Drive
3  San Diego, CA 92121
   Telephone:  (858) 550-6139
4  Facsimile:   (858) 550-6420

5  Daniel Shamah (pro hac vice forthcoming)
   *dshamah@cooley.com*
6  Brian M. French (pro hac vice forthcoming)
   *bfrench@cooley.com*
7  COOLEY LLP
   55 Hudson Yards
8  New York, NY 10001-2157
   Telephone:  (212) 479-6000
9  Facsimile:   (212) 479-6275

10 *Attorneys for Compagnie Monégasque de*
   *Banque*

11             **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13                 **LOS ANGELES DIVISION**

|  |  |
|---|---|
| In re | USDC Case No.: |
| ASHOT GEVORK EGIAZARIAN, an individual, | Case No. 2:25-bk-13838 BB |
|  | Hon. Sheri Bluebond |
| Debtor. | Chapter 7 |
| JOHN J. MENCHACA, in his capacity as Chapter 7 Trustee, | Adv. Proc. No. 2:25-ap-01197-BB |
| Plaintiff, | **COMPAGNIE MONÉGASQUE DE BANQUE'S ("CMB") NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL OF THE BANKRUPTCY COURT'S NOVEMBER 14, 2025 ORDER DENYING CMB'S MOTION TO DISMISS (DKT 103)** |
| v. | |
| COMPAGNIE MONÉGASQUE DE BANQUE, a bank of Monaco of unknown form; MITRA HOLDINGS SA, a Luxembourg entity of unknown form; LEX THIELEN, an individual; LEX THIELEN & ASSOCIES, a Luxembourg entity of unknown form; PB MONTAIGNE ATTORNEYS-AT-LAW LTD, a Swiss entity of unknown form; SUREN YEGIARZARYAN, also known as SUREN EGIAZARIAN, an individual; ARTEM YEGIARZARYAN, also known as ARTEM EGIAZARIAN, an individual, | Date:
Time: [No hearing set] |
| Defendants. | |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

1     **NOTICE IS HEREBY GIVEN** that Compagnie Monégasque de Banque

2  ("CMB") by and through its counsel of record, moves for leave to appeal the

3  Bankruptcy Court's November 14, 2025 Order Denying CMB's Motion to Dismiss

4  (Adv. Docket No. 103).

5

6     DATED: December 19, 2025

7
                              By: */s/ Mazda K. Antia*
8                              Mazda K. Antia

9                              Mazda K. Antia (SBN 214963)
10                             *mantia@cooley.com*
                              COOLEY LLP
11                             10265 Science Center Drive
                              San Diego, CA 92121
12                             Telephone:  (858) 550-6139
                              Facsimile:   (858) 550-6420
13

14                             Daniel Shamah (pro hac vice forthcoming)
                              *dshamah@cooley.com*
15                             Brian M. French (pro hac forthcoming)
                              *bfrench@cooley.com*
16                             COOLEY LLP
                              55 Hudson Yards
17                             New York, NY 10001-2157
                              Telephone:  (212) 479 6000
18                             Facsimile:   (212) 479 6275
19                             *Attorneys for Compagnie Monégasque de*
20                             *Banque*

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES................................................1

INTRODUCTION ........................................................................................................1

I.    BACKGROUND.................................................................................................2

    A.    Factual Background .................................................................................2

    B.    Procedural History ..................................................................................4

II.   ARGUMENT ......................................................................................................5

    A.    The Bankruptcy Court's personal jurisdiction holding warrants
interlocutory review. ..............................................................................6

        1.    The Bankruptcy Court's holding that its in rem
jurisdiction obviated the need to establish in personam
jurisdiction raises a controlling question of law.........................6

        2.    Substantial differences of opinion exist as to whether in
personam jurisdiction is required when a bankruptcy court
has in rem jurisdiction. ...............................................................7

        3.    Interlocutory review would materially advance the
litigation. ..................................................................................11

    B.    The Bankruptcy Court's *in rem* jurisdiction holding likewise
warrants interlocutory review. .............................................................12

        1.    Whether a bankruptcy court can exercise in rem
jurisdiction based on a prima facie case is a controlling
question of law.........................................................................12

        2.    Substantial differences of opinion exist as to the
appropriate standard for a bankruptcy court to apply in
determining whether it has in rem jurisdiction.........................13

        3.    Determining the appropriate standard for a bankruptcy
court to establish in rem jurisdiction would materially
advance the litigation. ..............................................................16

III.  CONCLUSION .........................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ad Hoc Committee of Holders of Trade Claims v. PG&E Corp.,*
614 B.R. 344 (N.D. Cal. 2020)................................................................2, 5

*In re Aheong,*
276 B.R. 233 (B.A.P. 9th Cir. 2002) ..................................................... 11

*In re AIO US, Inc.,*
672 B.R. 261 (Bankr. D. Del. 2025).........................................................9

*Aliya Medcare Finance, LLC v. Nickell,*
2014 WL 12526382 (C.D. Cal. Nov. 26, 2014) .................................. 13

*In re Belli,*
268 B.R. 851 (B.A.P. 9th Cir. 2001) .......................................................5

*In re Blackburn,*
448 B.R. 28 (Bankr. D. Idaho 2011) ..................................................... 11

*In re Catholic Bishop of Spokane,*
329 B.R. 304 (Bankr. E.D. Wash. 2005)............................................... 11

*In re Cement Antitrust Litigation,*
673 F.2d 1020 (9th Cir. 1982).............................................................5, 6

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010) ................................................................ 10

*In re Estate of Ferdinand Marcos Human Rights Litigation,*
94 F.3d 539 (9th Cir. 1996) ....................................................................5

*FDIC v. British-American Insurance Co.,*
828 F.2d 1439 (9th Cir. 1987) ................................................................8

*Formtec, LLC v. Wolff,*
2025 WL 2592545 (D. Or. Sept. 8, 2025) ........................................... 12

*Gates Learjet Corp. v. Jensen,*
743 F.2d 1325 (9th Cir. 1984) ................................................................9

*Go-Video, Inc. v. Akai Electric Co., Ltd.,*
885 F.2d 1406 (9th Cir. 1989) .............................................................. 10

*Healy v. Wells Fargo Bank, N.A.,*
2020 WL 7074939 (S.D. Cal. Dec. 3, 2020) ......................................6, 7

*In re Hernandez,*
483 B.R. 713 (9th Cir. BAP 2012) ....................................................... 11

*ICTSI Oregon, Inc. v. International Longshore & Warehouse Union,*
22 F.4th 1125 (9th Cir. 2022)............................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*James v. Price Stern Sloan, Inc.*,
 283 F.3d 1064 (9th Cir. 2002)................................................................. 13

*Liberty Media Holdings, LLC v. Tabora*,
 2011 WL 4626162 (S.D. Cal. Oct. 4, 2011)............................................. 8

*Lu v. Central Bank of Republic of China Taiwan*,
 2013 WL 12128821 (C.D. Cal. June 18, 2013)....................................... 12

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ................................................................................. 9

*In re Neidorf*,
 534 B.R. 369 (B.A.P. 9th Cir. 2015) ..................................................... 12

*Omeluk v. Langsten Slip & Batbyggeri A/S*,
 52 F.3d 267 (9th Cir. 1995).................................................................... 11

*Paccar International, Inc. v. Commercial Bank of Kuwait, S.A.K.*,
 757 F.2d 1058 (9th Cir. 1985)................................................................. 8

*R & B Wire Products, Inc. v. Everstrong Commercial Prods., LLC*,
 2019 WL 1069536 (C.D. Cal. Jan. 3, 2019)............................................ 8

*Ranza v. Nike, Inc.*,
 793 F.3d 1059 (9th Cir. 2015)................................................................. 8

*Rasmussen v. Dublin Rarities*,
 2015 WL 1133189 (N.D. Cal. Feb. 27, 2015)........................................ 12

*Reese v. BP Exploration (Alaska) Inc.*,
 643 F.3d 681 (9th Cir. 2011)..................................................... 5, 6, 9, 11

*In re Schmitt*,
 215 B.R. 417 (B.A.P. 9th Cir. 1997)................................................ 11, 12

*In re Sheehan*,
 48 F.4th 513 (7th Cir. 2022)............................................................ 5, 6, 7

*In re Sherman*,
 491 F.3d 948 (9th Cir. 2007)................................................................... 4

*In re Star Mountain Resources, Inc.*,
 2020 WL 6821721 (Bankr. D. Ariz. Sept. 30, 2020) ............................ 13

*Stern v. Marshall*,
 564 U.S. 462 (2011) .......................................................................... 11, 13

*Tennessee Student Assistance Corp. v. Hood*,
 541 U.S. 440 (2004) .......................................................................... 7, 12

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

MT FOR LEAVE TO FILE APPEAL
ADV. PROC. NO. 2:25-AP-01197-BB

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Tuazon v. R.J. Reynolds Tobacco Co.*,
   433 F.3d 1163 (9th Cir. 2006) ................................................................ 10

*United States v. $31,000.00 in U.S. Currency*,
   872 F.3d 342 (6th Cir. 2017) .................................................................... 9

*United States v. Obaid*,
   971 F.3d 1095 (9th Cir. 2020) .................................................................. 7

*United States v. One 1985 Cadillac Seville*,
   866 F.2d 1142 (9th Cir. 1989) .................................................................. 9

*Vitaly Ivanovich Smagin v. Compagnie Monégasque de Banque et al.*,
   No. 2:20-cv-11236 (RGK) (MAA) ...................................................... 2, 3

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................. 6, 8

*Weinberg & Co., P.A. v. Beasley Food Service, Inc.*,
   2008 WL 4500004 (C.D. Cal. Oct. 3, 2008) ............................................ 9

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) .................................................................. 7

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969) .................................................................................. 7

*Zepeda v. U.S. Immigration & Naturalization Service*,
   753 F.2d 719 (9th Cir. 1985) .................................................................... 7

**Statutes**

11 U.S.C.
   § 541 ....................................................................................................... 11
   § 541(a) ................................................................................................... 11

28 U.S.C.
   § 158(a)(3) ....................................................................................... 1, 4, 5
   § 1292(b) ................................................................................................... 5
   § 1334(e) ........................................................................................... 11, 13

**Other Authorities**

Fed. R. Bankr. P.
   8004(a) ...................................................................................................... 1
   8004(a)(2) .................................................................................................. 1
   8004(b)(1) ................................................................................................. 1

U.S. Const. Art. III ............................................................................................ 9

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

## MEMORANDUM OF POINTS AND AUTHORITIES

Compagnie Monégasque de Banque ("CMB") by and through its counsel of record, in accordance with Federal Rules of Bankruptcy Procedure, Rules 8004(a)(2) and (b)(1), provides the following memorandum of points and authorities in support of its motion for leave to appeal the Bankruptcy Court's November 14, 2025 Order Denying CMB's Motion to Dismiss (the "Order") (Adv. Docket 103). A district court may grant leave to hear appeals from interlocutory bankruptcy court orders. 28 U.S.C. § 158(a)(3). Appeal of an interlocutory order is taken by filing a notice of appeal accompanied by a motion for leave to appeal. Fed. R. Bankr. P. 8004(a), (a)(2).

## I.    INTRODUCTION

On November 14, 2025, the Bankruptcy Court entered an Order and Memorandum Decision denying CMB's Motion to Dismiss for lack of Personal Jurisdiction. Adv. Docket Nos. 103, 104 (collectively the "Order"). This Court should grant leave to appeal the Order.

The Order raises two separate questions that meet the standard for interlocutory review.

*First*, in denying CMB's motion, the Bankruptcy Court erroneously interpreted its supposed *in rem* jurisdiction over property to convey *in personam* jurisdiction over CMB. The Seventh Circuit has reached a contrary conclusion, holding that *in personam* jurisdiction cannot flow from jurisdiction over the *res*, and that, if a bankruptcy court lacks *in personam* jurisdiction over the holder of property, it cannot assert any control over that property. The Bankruptcy Court's order runs counter to that holding. And the Ninth Circuit has yet to resolve this important question about a bankruptcy court's power.

*Second*, the Bankruptcy Court also erred in concluding that it had *in rem* jurisdiction in the first place. The Bankruptcy Court determined that it had *in rem* jurisdiction over the property in question because it held that the Trustee had pled a

1    "*prima facie* case" sufficient to include the property in the bankruptcy estate.

2    Adoption of that standard would vastly expand the jurisdiction of bankruptcy courts

3    by allowing debtors to plead almost any property into a bankruptcy estate based on

4    minimal allegations. And no Ninth Circuit authority explains what standard

5    bankruptcy courts should apply in determining whether they have *in rem* jurisdiction

6    over property that debtors allege is in the bankruptcy estate.

7        Both issues (1) involve controlling questions of law (2) on which substantial

8    differences of opinion exist (3) such that an appeal would advance the ultimate

9    termination of the adversary proceeding. *See Ad Hoc Comm. of Holders of Trade*

10   *Claims v. PG&E Corp.*, 614 B.R. 344, 351 (N.D. Cal. 2020). The Bankruptcy Court's

11   jurisdiction over CMB and over the property at issue (the "Villa") are at the heart of

12   this adversary proceeding, in which the Trustee seeks to (1) assert control over the

13   Villa by incorporating it into the bankruptcy estate, and (2) enjoin CMB from

14   foreclosing on the Villa in a French foreclosure proceeding. If this Court were to hold

15   that the Bankruptcy Court lacks jurisdiction over CMB, that would confirm the

16   Bankruptcy Court's lack of authority over the Villa. The Bankruptcy Court's

17   conclusions are incorrect—and at minimum reasonably debatable. In addition, both

18   conclusions raise legal questions of first impression in the Ninth Circuit. This Court

19   should grant leave for CMB to file an interlocutory appeal.

20   **II.    BACKGROUND**

21       **A.    Factual Background**

22       CMB is a foreign bank conducting business from Monaco. Order 3. In 2019,

23   CMB issued an €8 million loan to a Luxembourg entity (Mitra Holdings, S.A.),

24   secured by a mortgage on the Villa, located in France. Complaint ¶ 19.[1] Mitra is

25   owned by Suren Yegiazaryan and Artem Yegiazaryan, two United States citizens

26   who live in California. Order 4, 7. The Complaint alleges that although Artem and

27

28   _____

[1] "Complaint" refers to the Complaint that commenced the above-captioned
adversary proceeding, Adv. Docket No. 1.

Suren "have nominally owned the equity of Mitra, [] the beneficial ownership of Mitra . . . belongs to" the Debtor and his ex-wife. Complaint ¶ 17. It further alleges that, because "Mitra is a shell entity," the Debtor and his ex-wife are also the "beneficial owners" of the Villa. Complaint ¶¶ 21–22.

In 2020, a third party named Vitaly Ivanovich Smagin brought an action against CMB, the Debtor, Suren, and Artem in the United States District Court for the Central District of California, captioned *Vitaly Ivanovich Smagin v. Compagnie Monégasque de Banque et al.*, No. 2:20-cv-11236 (RGK) (MAA) (the "Smagin Action"). Order 5. The Smagin Action was eventually resolved by a settlement agreement in 2024 (the "Settlement Agreement"). *Id.*

The Settlement Agreement had three provisions that the Bankruptcy Court viewed as relevant to CMB's Motion to Dismiss. First, the Settlement Agreement provided that "[a]ny controversy or claim arising out of or relating to [the agreement] or the performance of any Party thereunder including any alleged breach of the terms or conditions of [the agreement] shall be governed by California law." Order 5. Second, it stated that the parties agreed to "submit any Settlement Dispute to final and binding arbitration under the JAMS international arbitration rules" before an arbitrator in California. *Id.* Finally, the Settlement Agreement contained a provision that the Debtor claims was "a general release by CMB that eliminated the indebtedness" tied to the lien it holds on the Villa to secure the €8 million loan it made to Mitra. *Id.*

In 2024, CMB commenced a foreclosure action in a French court to enforce its rights against the Villa. *Id.* A few months later, the Debtor filed for arbitration against CMB contesting CMB's ability to enforce the lien, arguing it was extinguished by the Settlement Agreement. *Id.* The arbitration remains pending, but the Trustee has not advanced that arbitration.

### B.    Procedural History

In May 2025, the Debtor filed this Chapter 7 case, and the Trustee filed this Complaint, claiming that the Debtor and his ex-wife had an interest in the Villa, and that it is therefore properly within the bankruptcy estate. Complaint ¶ 17. The Complaint acknowledges that Mitra owns the Villa, and that Mitra is owned by two other parties, neither of whom is the Debtor. *Id.* But it alleges that because the Villa's "beneficial ownership" is in the Debtor, the Bankruptcy Court should overlook both of those antecedent layers of ownership to declare the Villa to be part of the bankruptcy estate. *Id.* ¶¶ 17, 19, 22. The Complaint also notes that CMB has commenced foreclosure proceedings in France on the Villa. *Id.* ¶ 19.

One day after the Complaint was filed, the Trustee moved for a temporary restraining order enjoining CMB from conducting a foreclosure sale. Adv. Docket 3, at 14. CMB was not timely served with that motion and consequently failed to oppose it. *See* Adv. Docket 62, at 12. The Bankruptcy Court granted the motion for a temporary restraining order and later converted it into a preliminary injunction. Adv. Docket 17, 30.

On September 16, 2025, CMB moved to dismiss the adversary proceeding, arguing that it had not been properly served,[2] and that the Court lacked personal jurisdiction over it. Adv. Docket 62, at 3–10, 12–14. As to the Bankruptcy Court's jurisdiction, CMB argued that it lacked general personal jurisdiction over CMB because its principal place of business was outside the United States, and that the Court lacked specific personal jurisdiction over CMB because, *inter alia*, (1) there were no allegations that CMB had affirmatively transacted business within the United States, given that its only relevant action was attempting to foreclose in a French court on a French villa that was owned by a Luxembourg entity, and (2) this case did not arise out of CMB's litigation conduct that the Trustee alleged was its relevant

---

[2]  Because the Trustee eventually served CMB in accordance with the Hague Convention, CMB withdrew its improper service argument. Adv. Docket 76, at 9 n.9.

Cooley LLP
Attorneys at Law
San Diego

4

MT FOR LEAVE TO FILE APPEAL
Adv. Proc. No. 2:25-ap-01197-BB

1  contact with the United States. *Id.* The Trustee opposed the motion. Adv. Docket 65.

2  On November 4, 2025, the Bankruptcy Court held a hearing on CMB's motion and

3  issued a tentative ruling denying the motion. Adv. Docket 93.

4       On November 14, 2025,[3] the Bankruptcy Court denied CMB's motion to

5  dismiss. Adv. Docket 104. The Bankruptcy Court agreed with CMB that it lacked

6  general jurisdiction over CMB. Order 6. But it held that it had *in personam*

7  jurisdiction based on (1) "CMB's business relationship with California residents and

8  U.S. citizens," (2) the choice-of-law clause in the Settlement Agreement, and (3) the

9  forum selection clause in the Settlement Agreement. Order 8. The Bankruptcy Court

10 separately held—without briefing or argument by either party—that it had *in rem*

11 jurisdiction over the Villa because it was "property of the debtor's estate." Order 10–

12 11. And it further concluded that it could "determine whether CMB's lien against the

13 Villa remains enforceable" and that "[s]uch a determination, even in the absence of

14 in personam jurisdiction, would be binding on CMB." *Id.*

15 **III.    ARGUMENT**

16      The Bankruptcy Court's denial of CMB's motion to dismiss warrants

17 immediate review by this Court. This Court has jurisdiction to grant leave to hear an

18 appeal "from . . . [an] interlocutory order" of a bankruptcy court. 28 U.S.C. §

19 158(a)(3); *see In re Sherman*, 491 F.3d 948, 967 n.24 (9th Cir. 2007) ("A decision to

20 deny a motion to dismiss . . . is an interlocutory order"). A motion for leave to appeal

21 under 28 U.S.C. § 158(a)(3) "look[s] for guidance to standards developed under 28

22 U.S.C. § 1292(b) to determine if leave to appeal should be granted." *In re Belli*, 268

23 B.R. 851, 858 (B.A.P. 9th Cir. 2001). Under those standards, leave is appropriate

24 where (1) "there is a controlling question of law," (2) "as to which a substantial

25 ground for a difference of opinion exists," and (3) "an immediate appeal could

26 materially advance the ultimate termination of the litigation." *Ad Hoc Comm. of*

27

28

---

[3] On November 25, 2025, the Bankruptcy Court ordered that CMB's Notice of Appeal and Motion for Leave to Appeal the Order should be filed by December 19, 2025. Adv. Docket 112.

*Holders of Trade Claims*, 614 B.R. at 351. If a petition identifies a single question of law that meets those prerequisites, the order is reviewable in its entirety. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Here, two questions independently merit interlocutory review.

### A.    The Bankruptcy Court's personal jurisdiction holding warrants interlocutory review.

The Bankruptcy Court concluded that its *in rem* jurisdiction allowed it to "determine whether CMB's lien against the Villa remains enforceable," and that "such a determination, even in the absence of in personam jurisdiction, would be binding on CMB." Order 11. In doing so, the court incorrectly conflated *in rem* jurisdiction with *in personam* jurisdiction. As described above, CMB has commenced foreclosure proceedings against the Villa in France. And as the Seventh Circuit recognized in *In re Sheehan*, 48 F.4th 513 (7th Cir. 2022), those proceedings should be allowed to continue if the Bankruptcy Court lacks *in personam* jurisdiction over CMB. The Bankruptcy Court's conclusion that it could issue a "binding" order against CMB was incorrect.

### 1.    The Bankruptcy Court's holding that its in rem jurisdiction obviated the need to establish in personam jurisdiction raises a controlling question of law.

The Bankruptcy Court's personal jurisdiction holding raises a controlling question of law. A question is controlling if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982). As explained below, the Bankruptcy Court erred in concluding that it has *in personam* jurisdiction over CMB. Without *in personam* jurisdiction, the Bankruptcy Court lacks authority to enjoin CMB from completing the foreclosure sale, and the automatic stay will not be enforceable against CMB. *See In re Estate of Ferdinand Marcos Human Rights Litig.*, 94 F.3d 539, 545 (9th Cir. 1996) (recognizing that a court can only enjoin entities over which it has personal jurisdiction, and emphasizing that a court should not issue an

Cooley LLP
Attorneys at Law
San Diego

6

MT for Leave to File Appeal
Adv. Proc. No. 2:25-ap-01197-BB

injunction that it cannot enforce); *Sheehan*, 48 F.4th at 521. If this Court agrees with CMB that the Bankruptcy Court has exceeded its jurisdiction, then CMB will proceed with the foreclosure sale to recover the value of its loan and this adversary proceeding will be moot as to CMB and the Villa. Accordingly, the personal jurisdiction issue could "materially affect the outcome" of this litigation. *In re Cement Antitrust Litig.*, 673 F.2d at 1026.

## 2. Substantial differences of opinion exist as to whether in personam jurisdiction is required when a bankruptcy court has in rem jurisdiction.

This question also presents a "novel legal issue[] . . . on which fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688. The Bankruptcy Court believed that its purported *in rem* jurisdiction over the Villa allowed it to "determine whether CMB's lien against the Villa remains enforceable," and that "[s]uch a determination, *even in the absence of in personam jurisdiction*, would be binding on CMB." Order 11 (emphasis added). But "[p]ersonal jurisdiction [is] the court's power to bind a party to its judgment." *Healy v. Wells Fargo Bank, N.A.*, 2020 WL 7074939, at *3 (S.D. Cal. Dec. 3, 2020) (citing *Walden v. Fiore*, 571 U.S. 277, 283 (2014)). The Bankruptcy Court impermissibly sought to bootstrap its *in personam* jurisdiction over CMB from its supposed *in rem* jurisdiction over the Villa.

Although the Ninth Circuit has not yet addressed the intersection of *in personam* and *in rem* jurisdiction, the Seventh Circuit did so in *Sheehan*. There, a debtor in Illinois moved to enforce the automatic stay to prevent the foreclosure sale on his property in Ireland. *Sheehan*, 48 F.4th at 517. All parties conceded that the property was a part of the bankruptcy estate. *Id.* at 521. But the bankruptcy court had concluded that it lacked personal jurisdiction over the parties seeking to foreclose on the property. *Id.* at 521. On appeal to the Seventh Circuit, the debtor argued that the bankruptcy court could nonetheless establish *in personam* jurisdiction over the parties based on its *in rem* jurisdiction over the property in the estate. *Id.* at 522. But

the Seventh Circuit rejected this argument and affirmed the bankruptcy court, holding that the bankruptcy court's "ability to assert control over any property in [the debtor]'s estate located in Ireland depends on whether the court has personal jurisdiction over the Irish citizens and entities holding that property." *Id.* at 521. The Seventh Circuit thus concluded that the bankruptcy court could not assert *in personam* jurisdiction based only on its *in rem* jurisdiction and—as a result—that it lacked the authority to prevent the foreclosure sale.

The Bankruptcy Court's conclusion here conflicts with the Seventh Circuit's holding in *Sheehan*. The Trustee brought this adversary proceeding to assert ownership over the Villa and to halt a foreclosure sale by CMB. Order 5 n.2. In denying CMB's motion to dismiss, the Bankruptcy Court held that any objection to its *in personam* jurisdiction was functionally meaningless because, in its view, it had *in rem* jurisdiction over the Villa, which allowed it to adjudicate the Villa's ownership with "binding" force on CMB. Order 11. But issuing binding orders requires personal jurisdiction. *Healy*, 2020 WL 7074939, at *3. Thus, as the Seventh Circuit recognized in *Sheehan*, the Bankruptcy Court's "ability to assert control over [the Villa] . . . depends on whether the court has personal jurisdiction over the . . . entit[y] holding that property." 48 F.4th at 521.

Supreme Court and Ninth Circuit precedent reinforce the point. The Supreme Court has explained that when a bankruptcy court's jurisdiction is only *in rem*, "a nonparticipating creditor cannot be subjected to personal liability." *Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 448 (2004). And the Ninth Circuit has emphasized that it has not "eliminate[d] the historical distinction between *in personam* and *in rem* jurisdiction." *U.S. v. Obaid*, 971 F.3d 1095, 1101–02 (9th Cir. 2020). Under those principles, a district court needs personal jurisdiction over a party before it can enjoin the party's action, *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1985), and "a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." *Zenith*

*Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 110 (1969). The Bankruptcy Court's decision disregards these settled principles.

The Bankruptcy Court's alternative grounds for its personal jurisdiction determination are also incorrect—and at minimum debatable. First, the Ninth Circuit has held that a foreign entity's business relationship with persons who happen to reside in the United States is not sufficient to establish minimum contacts with the United States. *See, e.g.*, *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (stating that the requisite "minimum contacts" must be "with the forum State itself, not . . . with persons who reside there") (citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014). But the Bankruptcy Court held that CMB had minimum contacts with the United States based on its "business relationship with California residents." Order 8. And even that misstates the facts: CMB's contacts are not with any persons who reside in the United States; they are with a foreign entity—Mitra—that is owned by those residents. And if Mitra is "owned beneficially entirely by Debtor"—as the Complaint alleges—that only makes CMB's contacts even more attenuated: the Debtor is not a United States citizen, and he resides in France. Complaint ¶ 8.

The Ninth Circuit's decision in *Ranza v. Nike, Inc.*, 793 F.3d 1059 (9th Cir. 2015), illustrates the Bankruptcy Court's error. There, the Ninth Circuit concluded that it had to perform an in-depth analysis of an alter ego relationship before holding that individuals' contacts with a forum state were sufficient to establish minimum contacts for their "subsidiary" corporation. *Id.* at 1071–72. But here, the Bankruptcy Court concluded that CMB's contacts with Mitra were sufficient to establish minimum contacts for CMB based only on *Mitra*'s—not CMB's—relationship with United States citizens. Order 10. And it did so without any analysis of an alter ego relationship or veil piercing.

The Bankruptcy Court also concluded that entry into a settlement agreement with a California choice-of-law clause sufficed to establish minimum contacts with the United States. But it is well-established that "[t]he fact that a contract is governed

by the law of a particular state does not establish that the parties have purposefully availed themselves of the privilege of conducting business in that state." *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1063 n.6 (9th Cir. 1985); *see also FDIC v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1443 (9th Cir. 1987) ("[A] contract alone is not sufficient to establish purposeful interjection into a forum state.").

In addition, the Bankruptcy Court concluded that CMB's entry into a settlement agreement with a forum-selection clause stating that disputes would be resolved before a specific arbitrator in California was sufficient to establish minimum contacts. Order 10. But a forum-selection clause constitutes consent to personal jurisdiction only "in the identified forum" and when "it covers the dispute at hand." *Liberty Media Holdings, LLC v. Tabora*, 2011 WL 4626162, at *3 (S.D. Cal. Oct. 4, 2011) (first quote); *R & B Wire Prods., Inc. v. Everstrong Com. Prods., LLC*, 2019 WL 1069536, at *2 (C.D. Cal. Jan. 3, 2019) (second quote). A contrary rule would be untenable because it would mean that any forum-selection clause would establish general jurisdiction over a party. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Here, the forum-selection clause names an arbitrator as the "identified forum;" it therefore does not confer personal jurisdiction on the bankruptcy court. *See Weinberg & Co., P.A. v. Beasley Food Serv., Inc.*, 2008 WL 4500004, at *4 (C.D. Cal. Oct. 3, 2008) ("An arbitration clause identifying a forum for arbitration, without more, does not confer personal jurisdiction.")

Finally, in the absence of personal jurisdiction over CMB, the Bankruptcy Court's *in rem* jurisdiction over the Villa would not even be enough to establish the court's subject-matter jurisdiction over the Trustee's claim. "As in any federal suit," a party seeking relief in a bankruptcy action "must have Article III standing." *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 348–49 (6th Cir. 2017); *accord United States v. One 1985 Cadillac Seville*, 866 F.2d 1142, 1148 (9th Cir. 1989) (concluding party lacked standing to bring *in rem* action). Among the requirements to establish standing is showing that the party's "injury will be redressed by a

1    favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)

2    (citation modified); *see 1985 Cadillac Seville*, 866 F.2d at 1148. For that reason, a

3    party seeking a declaration as to their interest in property must "show how such a

4    declaration would benefit him." *1985 Cadillac Seville*, 866 F.2d at 1148. Otherwise,

5    the party "lack[s] the required personal stake in the outcome," and the court lacks

6    subject-matter jurisdiction to adjudicate the dispute. *Cf. In re AIO US, Inc.*, 672 B.R.

7    261, 269 (Bankr. D. Del. 2025) ("Federal courts do not issue advisory opinions about

8    the law[.]" (alteration omitted)). Here, because the Bankruptcy Court lacks personal

9    jurisdiction over CMB, any finding it makes as to ownership of the Villa would be

10   unenforceable and the quintessential—and impermissible—advisory opinion.

11       The Bankruptcy Court's decision as to its *in personam* jurisdiction over CMB

12   is thus erroneous—and at the very least, "fair-minded jurists might reach [a]

13   contradictory conclusion." *Reese*, 643 F.3d at 688. Indeed, the Seventh Circuit has

14   done just that. And although the Ninth Circuit has not yet resolved the issue presented

15   here, that only weighs in favor of an immediate appeal. As the Ninth Circuit has

16   recognized, interlocutory review is especially warranted where, as here, "the court of

17   appeals of the circuit has not spoken on the point," and "novel and difficult questions

18   of first impression are presented." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th

19   Cir. 2010).

20       **3.    Interlocutory review would materially advance the litigation.**

21       Resolving this question now would also materially advance this litigation. The

22   Bankruptcy Court effectively concluded that it had *in personam* jurisdiction

23   because—in its view—it had *in rem* jurisdiction. The Ninth Circuit has repeatedly

24   held that similar denials of motions to dismiss for lack of personal jurisdiction

25   merited interlocutory appeal because they would materially advance litigation. *See,*

26   *e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1168 (9th Cir. 2006)

27   (considering immediate appeal from decision to deny motion to dismiss for lack of

28

Cooley LLP
Attorneys at Law
San Diego

11

MT FOR LEAVE TO FILE APPEAL
Adv. Proc. No. 2:25-ap-01197-BB

personal jurisdiction); *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1408 (9th Cir. 1989) (same). The same logic applies here.

**B.    The Bankruptcy Court's *in rem* jurisdiction holding likewise warrants interlocutory review.**

The Bankruptcy Court's *in rem* jurisdiction holding is also worthy of immediate appellate review. The Court based its conclusion that it had *in rem* jurisdiction on the same standard that it applied to determining *in personam* jurisdiction: that the Trustee had pled a "*prima facie* case" sufficient to establish the Court's jurisdiction. Order 3, 10–11. Although the Ninth Circuit has held that a "*prima facie* case" suffices to establish a court's *in personam* jurisdiction over a person or entity, it has never resolved the standard for establishing *in rem* jurisdiction. To ensure that bankruptcy court jurisdiction remains limited, the standard for establishing *in rem* jurisdiction must be more rigorous. The Bankruptcy Court erred in holding otherwise.

**1.    Whether a bankruptcy court can exercise in rem jurisdiction based on a prima facie case is a controlling question of law.**

Determining the appropriate standard for establishing *in rem* jurisdiction presents a controlling question of law. First, it is a "question of law . . . not fact," *ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union,* 22 F.4th 1125, 1130 (9th Cir. 2022), as CMB contends that the Bankruptcy Court applied the wrong legal standard in reaching its jurisdictional conclusion. The question is also controlling. The Bankruptcy Court's jurisdiction over the *res* in question, the Villa, goes to the heart of the adversary proceeding. As the Bankruptcy Court itself observed: "Knowing whether the Villa is an asset of the Estate and whether or not it is encumbered by a sizeable lien in favor of CMB will dramatically affect the outcome of this bankruptcy case and will have a major impact on the size of any distributions that may be available to creditors and other parties in interest in the Case." Order 10.

1

2

**2.      Substantial differences of opinion exist as to the appropriate standard for a bankruptcy court to apply in determining whether it has in rem jurisdiction.**

3

4

5

6

7

8

9

The second question also raises "novel legal issues . . . on which fair-minded jurists might reach contradictory conclusions." *Reese*, 643 F.3d at 688. The Bankruptcy Court determined that the Trustee needed only to "ma[ke] a *prima facie* showing of facts sufficient to establish . . . jurisdiction." Order 3. But while that is the correct standard for establishing *in personam* jurisdiction, *see, e.g.*, *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 269 (9th Cir. 1995), the Ninth Circuit has never applied such a standard to *in rem* jurisdiction.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Bankruptcy Court erred in transplanting the *in personam* jurisdiction standard into this distinct context. "[B]ankruptcy courts are courts of limited jurisdiction." *In re Aheong*, 276 B.R. 233, 248 (B.A.P. 9th Cir. 2002). Most importantly, their jurisdiction extends only to matters concerning the bankruptcy estate. *Stern v. Marshall*, 564 U.S. 462, 503 (2011). And a bankruptcy estate only includes the "legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). "While the scope of estate property under § 541 is intended to be broad, it is not without bounds." *In re Blackburn*, 448 B.R. 28, 36 (Bankr. D. Idaho 2011). Most importantly—and definitionally—property in which "the Debtor had no legal interest . . . is not part of the bankruptcy estate." *In re Schmitt*, 215 B.R. 417, 425 (B.A.P. 9th Cir. 1997). Once a bankruptcy court establishes its jurisdiction over property, however, its power is both significant and "exclusive." 28 U.S.C. § 1334(e); *See, e.g.*, *In re Cath. Bishop of Spokane*, 329 B.R. 304, 315 (Bankr. E.D. Wash. 2005) ("The Bankruptcy Court has exclusive jurisdiction to make such determinations."). For example, a bankruptcy court can "order turnover of property to the debtor's estate." *In re Hernandez*, 483 B.R. 713, 720 (9th Cir. BAP 2012). The court also "ha[s] the authority to sell a debtor's property" and to "determine all claims that anyone . . . has to the property or thing in question." *Hood*, 541 U.S. at 448.

1      Allowing parties to establish that property is within the bankruptcy estate

2    based on minimal allegations would therefore vastly expand the power of bankruptcy

3    courts. In analogous situations where a court's jurisdiction depends on factual

4    allegations, courts evaluate those allegations under a rigorous standard. *See, e.g.*, *Lu*

5    *v. Cent. Bank of Republic of China Taiwan*, 2013 WL 12128821, at *1 (C.D. Cal.

6    June 18, 2013) (stating that a Plaintiff had "not met her burden to allege facts

7    sufficient to establish an exception to [] immunity under the Foreign Sovereign

8    Immunities Act"). The question of how—and under what standard—property comes

9    within the Bankruptcy Court's jurisdiction is therefore a significant and contestable

10   one.

11      This case illustrates the dangers of applying a prima facie standard in the *in*

12   *rem* jurisdiction context. The Bankruptcy Court concluded that it had *in rem*

13   jurisdiction over the Villa based only on the allegations in the Complaint and without

14   either party raising or briefing the issue. Order 11. But the Complaint's allegations

15   are conclusory at best. The Complaint concedes that the Villa was owned by Mitra

16   (not the Debtor), which was in turn owned by two "nominees" (neither of whom is

17   the Debtor either). Complaint ¶ 17. That is two steps removed from ownership by the

18   Debtor, and unless the Trustee provides a legal basis for surmounting each hurdle,

19   the Villa cannot be included in the bankruptcy estate. *In re Schmitt*, 215 B.R. at 425;

20   *see In re Neidorf*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015) ("The party seeking to

21   include property in the estate bears the burden of showing that the item is property

22   of the estate."). The Complaint does not even try to establish that the nominees are

23   legal alter-egos of the Debtor, or that grounds exist to pierce Mitra's corporate veil.

24   And even if the Complaint had taken either position, both would need to be pled and

25   proven, element by element. *See, e.g.*, *Formtec, LLC v. Wolff*, 2025 WL 2592545, at

26   *10 (D. Or. Sept. 8, 2025) ("Formtec is seeking to pierce the corporate veil, and must

27   allege and prove the elements for piercing the corporate veil."); *Rasmussen v. Dublin*

28   *Rarities*, 2015 WL 1133189, at *10 (N.D. Cal. Feb. 27, 2015) ("[A] plaintiff must

plead the elements of alter ego and factors in support of those elements."). Instead, the Complaint alleges only that Mitra "was formed solely for [the] purpose" of purchasing the Villa. Complaint ¶ 17. There is nothing remarkable about a corporation's being organized only to purchase a piece of property, and such an arrangement is often made, in fact, with the understanding that it will keep property *out of* a bankruptcy estate. *See, e.g.*, *Aliya Medcare Fin., LLC v. Nickell*, 2014 WL 12526382, at *7 (C.D. Cal. Nov. 26, 2014) (describing practice of creating a "single-purpose entity" to acquire property) (citation omitted).

The Bankruptcy Court nonetheless found the Complaint sufficient to establish that the Villa is the property of the Debtor and therefore within its *in rem* jurisdiction. And because it only required a *prima facie* case to reach that conclusion, the Bankruptcy Court's analysis was limited to a single sentence: "the Trustee claims the Debtor and his ex-wife have always been the true beneficial owners of Mitra and that Mitra is a shell entity whose corporate form may be disregarded." Order 11. Based on that sentence alone, the Bankruptcy Court concluded that it could bring the Villa—in which the Debtor lacks title or legal interest—into the bankruptcy estate and under its "exclusive" authority. 28 U.S.C. § 1334(e).

The Bankruptcy Court's lenient standard for establishing its *in rem* jurisdiction was incorrect—and at least debatable. The scope of bankruptcy court jurisdiction is subject to precise statutory and constitutional limits. *See, e.g.*, *Stern*, 564 U.S. at 487. Yet under the Bankruptcy Court's Order, parties could circumvent those limits through mere allegations. The validity of that rule presents an "important and unsettled question of law" that warrants interlocutory review. *See James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 (9th Cir. 2002) (stating that "important and unsettled question[s] of law" merit interlocutory review).

3. **Determining the appropriate standard for a bankruptcy court to establish in rem jurisdiction would materially advance the litigation.**

Finally, resolution of this issue would materially advance the litigation. Determining what is property of a bankruptcy estate and what claims exist against the estate "are at the heart . . . of the bankruptcy court's authority and jurisdiction." *In re Star Mountain Res., Inc.*, 2020 WL 6821721, at *6 (Bankr. D. Ariz. Sept. 30, 2020). If, as CMB believes, the Bankruptcy Court lacks *in rem* jurisdiction over the Villa, then that confirms that CMB can proceed with its foreclosure sale.

## IV. CONCLUSION

The Court should grant CMB leave to appeal the Bankruptcy Court's interlocutory order.

By: */s/ Mazda K. Antia*
Mazda K. Antia

Mazda K. Antia (SBN 214963)
*mantia@cooley.com*
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121
Telephone:   (858) 550-6139
Facsimile:    (858) 550-6420

Daniel Shamah (pro hac vice forthcoming)
*dshamah@cooley.com*
Brian M. French (pro hac vice forthcoming)
*bfrench@cooley.com*
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone:   (212) 479 6000
Facsimile:    (212) 479 6275
*Attorneys for Compagnie Monégasque de Banque*

1

## CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

2          The undersigned, counsel of record for Compagnie Monégasque de Banque,

3    certifies that this brief contains 5,238 words, which complies with the word limit of

4    L.R. 11-6.2.

5    Dated:    December 18, 2024          **COOLEY LLP**

6                                         */s/ Mazda K. Antia*
                                          Mazda K. Antia
7                                         *Attorneys for Compagnie Monégasque de*
                                          *Banque*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10265 Science Center Drive, San Diego, CA 92121-1117.

A true and correct copy of the foregoing document entitled (*specify*):

1.  **COMPAGNIE MONÉGASQUE DE BANQUE'S ("CMB") NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL OF THE BANKRUPTCY COURT'S NOVEMBER 14, 2025 ORDER DENYING CMB'S MOTION TO DISMISS (DKT 103)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **December 19, 2025,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Kyra E Andrassy**    kandrassy@raineslaw.com, bclark@raineslaw.com;csantiago@raineslaw.com
- **Mazda Antia**    mantia@cooley.com, eFilingNotice@cooley.com;efiling-notice@ecf.pacerpro.com
- **Cynthia M Cohen**    ccohen@brownwhitelaw.com
- **Steven R Fox**    emails@foxlaw.com
- **John M Genga**    jgenga@gengalaw.com
- **Christopher J Harney**    charney@tocounsel.com, kmanson@tocounsel.com
- **Aaron J Malo**    amalo@sheppardmullin.com, abilly@sheppardmullin.com;mlinker@sheppardmullin.com
- **John J Menchaca (TR)**    jmenchaca@menchacacpa.com, igaeta@menchacacpa.com;ecf.alert+Menchaca@titlexi.com
- **Allan L. Schare**    aschare@tocounsel.com
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On **December 19, 2025,** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Artem Yegiarzaryan aka
Artem Egiazarian
1605 Pentecost Way, Unit 1
San Diego, CA 92105

Matthew W. Grimshaw
Grimshaw Law Group, P.C.
800 West Main Street, Suite 1460
Boise, ID 83702

☐Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **December 19, 2025,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Via Federal Express Delivery:**
Hon. Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1534 (Courtroom 1539)
Los Angeles, CA 90012

**Via Email:**
matt@grimshawlawgroup.com
amalo@sheppardmullen.com
abilly@sheppardmullen.com
hudenka@sheppardmullen.com
qjessner@phillipsjessner.com
lt@lexthielen.com
artem3artem@gmail.com
s.baye@spectra-avocats.com
f.kieffer@allexavocats.fr
avocats@rouillot-gambini.fr
jerdman@scalilaw.com
rozanna@kvfamilylaw.com

- ☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 19, 2025 | Cynthia E. Hourani | /s/ Cynthia E. Hourani |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                   -12-        **F 9013-3.1.PROOF.SERVICE**